Lisa A. LI

v.

**C.N. BROWN COMPANY.**

Supreme Judicial Court of Maine.

Argued Nov. 17, 1993.
Decided July 26, 1994.

Paul F. Macri (orally), Berman & Simmons, P.A., Lewiston, for plaintiff.

Richard N. Hewes (orally), Hewes & Nye, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ., and COLLINS, A.R.J.[*]

CLIFFORD, Justice.

Plaintiff Lisa A. Li, in her capacity as personal representative of the Estate of Melissa Roy, appeals from a summary judgment entered in the Superior Court (Androscoggin County, *Alexander, J.*) in favor of defendant, C.N. Brown Company. The court concluded that the immunity and exclusivity provisions of the Workers' Compensation Act in effect at the time of Roy's death, 39 M.R.S.A. §§ 4, 28 (1989), barred the action. Li contends on appeal that employers should be held liable for work-related injuries to employees caused by intentional acts. Li also argues that C.N. Brown should be held liable under the dual persona doctrine. We affirm the judgment.

According to Li's complaint, on September 19, 1990, C.N. Brown was informed by the Lewiston Police Department that a former employee planned to commit an armed robbery of their Big Apple convenience store on Main Street in Lewiston. C.N. Brown did not close the store, where Roy was working alone, and the store was robbed. Roy was stabbed repeatedly, and she died from her injuries.

Li filed a complaint alleging that, as Roy's employer, C.N. Brown had intentionally and negligently caused her death and her pain and suffering. C.N. Brown filed a motion for summary judgment, arguing that because Roy was an employee of C.N. Brown, because her death occurred during the course of her employment, and because C.N. Brown had procured workers' compensation insurance, Roy's estate was barred from recovering damages in a civil action. The Superior Court granted C.N. Brown's motion for summary judgment, and Li appeals from that judgment.

■ In an appeal from a summary judgment for the defendant, we give the plaintiff the benefit of all favorable inferences that may be drawn from the record and determine if the trial court committed an error of law. *Estate of Althenn v. Althenn*, 609 A.2d 711, 714 (Me.1992); *see Fanion v. McNeal*, 577 A.2d 2, 3 (Me.1990).

## I.

■ The exclusivity and immunity provisions of the Workers' Compensation Act bar employees from pursuing civil litigation against their employers for injuries incurred in the course of employment. 39 M.R.S.A. §§ 4, 28 (1989).[1] The wording of these sections is broad and encompassing, exempting

[*] Justice Collins sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity of Active Retired Justice.

1. 39 M.R.S.A. § 4 (1989), in effect at the time of Roy's death, states in pertinent part:

An employer who has secured the payment of compensation in conformity with sections 21-A to 27 is exempt from civil actions, either at common law or under sections 141 to 148, Title 14, sections 8101 to 8118, and Title 18-A, section 2-804, involving personal injuries sustained by an employee arising out of and in the course of his employment, or for death resulting from those injuries.

39 M.R.S.A. § 4 has been repealed and replaced by 39-A M.R.S.A. § 104 (Supp.1993). P.L.1991, ch. 885, §§ A-7, A-8.

39 M.R.S.A. § 28 (1989), in effect at the time of Roy's death, provides in pertinent part:

An employee of an employer, who shall have secured the payment of compensation as provided in sections 21 to 27 shall be held to have waived his right of action at common law to recover damages for the injuries sustained by him, and under the statutes specified in section 4.

39 M.R.S.A. § 28 was repealed and replaced by 39-A M.R.S.A. § 28-A. P.L.1991, ch. 544 §§ 12, 13. 39-A M.R.S.A. § 28-A has in turn been repealed and replaced by 39-A M.R.S.A. § 408 (Supp.1993). P.L.1991, ch. 885, §§ A-7, A-8.

an insured employer from civil actions involving employee injuries and deeming the employee to have waived the right to sue the employer for injuries incurred in the course of employment. The legislative intent in enacting a comprehensive workers' compensation statute was to " 'giv[e] effect to the underlying policy of providing certainty of remedy to the injured employee and absolute but limited and determinate liability for the employer.' " *Beverage v. Cumberland Farms N., Inc.*, 502 A.2d 486, 489 (Me.1985) (quoting *McKellar v. Clark Equip. Co.*, 472 A.2d 411, 414 (Me.1984)).

■ Li contends that the exclusivity and immunity provisions of the Workers' Compensation Act do not apply to employers' intentional torts, arguing that the Act was never intended to address intentional torts. Li also contends that an exception to exclusivity and immunity is warranted for employers' actions that intentionally place employees in harm's way. We find nothing in the language of the Act to support such contentions, and we decline to create a judicial exception to the exclusivity and immunity provisions for employers' intentional torts.

The language of the Act does not support Li's argument that the workers' compensation statute in effect at the time of Roy's death was not intended to apply to workplace injuries resulting from intentional torts. The workers' compensation statute no longer requires injuries to have been accidental to fall within the scope of the Act. *See, e.g.*, P.L. 1973, ch. 389 (legislature deleted the words "by accident" from the statute). The Act applies to all work-related injuries and deaths, however caused, not just accidental injuries and deaths.

Li argues that if injuries or deaths resulting from intentional acts are covered by the Act, employers would be allowed to engage in misconduct without being held financially responsible; such a statutory framework would permit employers to make investment decisions to harm their own workers. *See Beauchamp v. Dow Chem. Co.*, 427 Mich. 1, 398 N.W.2d 882, 889 (1986); *Blankenship v. Cincinnati Milacron Chem., Inc.*, 69 Ohio St.2d 608, 615, 433 N.E.2d 572, 579 (1982). We are unpersuaded that such a possibility should lead us to ignore the plain language of the Workers' Compensation Act. Criminal sanctions are available when an employer's behavior is egregious. If the legislature had intended employers to forfeit a part of their immunity from civil liability for injuries in tort suits, it easily could have created an intentional tort exception to the workers' compensation exclusivity and immunity provisions.

Although narrow intentional tort exceptions to workers' compensation coverage exist in a number of jurisdictions, those exceptions frequently have been created by statutory change, or are based on "accidental injury" language in workers' compensation statutes. *See* 2A A. Larson, *The Law of Workmen's Compensation* § 68.11 (1987); 101 C.J.S *Workmen's Compensation* § 926(a) (1958). The creation of such an exemption in this state is best left to the legislature. *See Fanion*, 577 A.2d at 4.

■ We have been reluctant to engraft common law rules onto the uniquely statutory scheme of workers' compensation law. *American Mut. Ins. Co. v. Murray*, 420 A.2d 251, 252 (Me.1980). The workers' compensation statute was established by the legislature in response to its dissatisfaction with the efficacy of judicial solutions to the problems of remedies for workplace accidents. *Id.* In keeping with the purpose of the Workers' Compensation Act, we have construed broadly both the exclusivity and immunity provisions of the Act. *See Fanion*, 577 A.2d at 4 (refusing to create exception for illegally employed minors injured in the course of employment). If an employer subject to the Workers' Compensation Act secures the payment of workers' compensation, its employees are barred from suing that employer for damages for work-related injuries. *Beverage*, 502 A.2d at 489 (employee unable to bring civil action against employer under Employer Liability Law for damages arising from rape on work premises). In the absence of legislative changes in the Act, we decline to narrow the heretofore broadly construed workers' compensation exclusivity and immunity provisions.

■ In this case, C.N. Brown had secured payment of workers' compensation pursuant to the Workers' Compensation Act. Therefore, Li, as the personal representative of Roy's estate, is barred by sections 4 and 28 of the Act from pursuing civil litigation against C.N. Brown for its negligent or intentional conduct resulting in Roy's injuries and death.[2]

## II.

■ Li also asserts that C.N. Brown should be held liable for Roy's death under the dual persona doctrine, alleging that C.N. Brown had an independent duty to Roy as the owner of the building in which she worked. To be liable as a third party under the dual persona doctrine, an otherwise exempt employer must have a second persona so independent from its status as an employer that it constitutes a separate legal entity and creates a second set of obligations to the employee completely distinct from the duties of employment. *Hatch v. Lido Co. of New England,* 609 A.2d 1155, 1156 (Me.1992). Li has not alleged in her complaint that C.N. Brown maintained a separate legal identity that owned the premises where Roy was killed. Thus, the dual persona doctrine cannot be invoked to create tort liability against C.N. Brown in this instance.

The entry is:

Judgment affirmed.

WATHEN, C.J., ROBERTS, RUDMAN and DANA, JJ., and COLLINS, A.R.J., concurring.

GLASSMAN, Justice, dissenting.

This case presents the Court with the novel issue whether, as a matter of law, an employer, who knows of the risk of death or serious bodily injury to an employee and willfully and intentionally exposes that employee to such risk without the knowledge or consent of the employee, is immune from a civil action for damages for the resultant death of the employee. Because I do not believe it was the intent of the Legislature to allow an employer to willfully and intentionally expose an unknowing employee to serious injury or death and be insulated from liability except to the extent of the benefits provided by the Workers' Compensation Act, I must respectfully dissent.

Contrary to the Court's position, I agree with Li's argument that the language of the Act, as well as our previous decisions, makes clear that the Act was not intended to apply to the circumstances presented by this case. By P.L.1985, ch. 372, Part A, § 34, effective June 30, 1985, the Legislature repealed the former section 94–A, subsection 3, of the Act, which provided,

> In interpreting this Act, the [Workers' Compensation] commission shall construe it liberally.... The rule that statutes in derogation of the common law are to be strictly construed shall have no application to ·this Act.

and replaced it with the following provision:

> All workers' compensation cases shall be decided on their merits and the rule of liberal construction shall not apply to those cases. Accordingly, this Act is not to be given a construction in favor of the employee, nor are the rights and interests of the employer to be favored over those of the employee.

*See* 39 M.R.S.A. § 94–A(3) (1989). *See also* 39–A M.R.S.A. § 153(3) (Supp.1993) (adopting virtually identical language in current version of the Act). By the repeal and replacement of the previous section 94–A, subsection 3, the Legislature expressed a clear intent that as between an employee and employer a policy of neutrality must be observed in determining whether any given factual situation comes within the purview of the Act. The Legislature thus clarified that which had been implicit—the Act was not

---

2. In addition, Roy's fatality arose out of her employment, as required by 39 M.R.S.A. § 4. An injury arises out of employment when, in some proximate way, it has its origin, its source, or its cause in the employment. *Bruton v. City of Bath,* 432 A.2d 390, 392 (Me.1981); *Rioux v. Franklin County Memorial Hosp.,* 390 A.2d 1059, 1061 (Me.1978). It is undisputed that Roy's injury took place during a robbery against the ·store. Moreover, Li's complaint against C.N. Brown is premised on a breach of its duty to Roy created by their employment relationship. Thus, that Roy's death arose out of her employment is the only conclusion supported by the evidence.

intended to compensate employees for all injuries that occurred in the workplace, nor was it to be a refuge for employers desirous of limiting their legal liability for all such injuries.

As recognized by our previous decisions, since the initial enactment of the Act there explicitly have been two essential statutory prerequisites to its application. It must be established that the injury or death of an employee (1) was incurred in the course of employment *and* (2) arose out of that employment. 39 M.R.S.A. § 4 (1989), *repealed and replaced by* 39–A M.R.S.A. § 104 (Pamph.1993); 39 M.R.S.A. § 28 (1989), *repealed and replaced by* 39–A M.R.S.A. § 28–A; P.L.1991, ch. 544, §§ 12, 13, *repealed and replaced by,* 39–A M.R.S.A. § 408 (Pamph. 1993). These two factors are not synonymous. *Hebert v. International Paper Co.,* 638 A.2d 1161, 1162 (Me.1994). "Although an injury may occur in the course of employment, it does not necessarily arise out of the employment." *Rioux v. Franklin County Memorial Hospital, et al.,* 390 A.2d 1059, 1061 (Me.1978). To harmonize both statutory components, the crucial question to be determined in each case is whether the record exhibits a sufficient work connection between an employee's employment and the cause of the employee's injury or death to justify the employer's immunity pursuant to the Act. *See Comeau v. Maine Coastal Services,* 449 A.2d 362, 366–67 (Me.1982). A critical factor in this determination is "whether the activity was 'implied into the contract of employment'." *Dorey v. Forster Mfg. Co.,* 591 A.2d 240, 242 (Me.1991) (quoting *Moreau v. Zayre Corp.,* 408 A.2d 1289, 1293 (Me. 1979)).[1] "The analysis proceeds on a case-by-case basis, weighing each fact situation to decide whether the totality of circumstance makes the activity employment-related." *Dorey,* 591 A.2d at 242. No rational construction of the employment contract between Melissa Roy and C.N. Brown would support a conclusion that the events leading to her death were "implied in the contract of employment." Nor can it be said the totality of the circumstance in this case made the conduct of C.N. Brown employment-related. It is inconceivable that any employer or employee would have expectations that their employment contract would encompass the employer's willful and intentional exposure of the employee to death by knife wounds inflicted by an ex-employee. *See Fermino v. Fedco, Inc.,* 7 Cal.4th 701, 30 Cal.Rptr.2d 18, 31, 872 P.2d 559, 572 (1994) (claim of false imprisonment committed by employer against employee is "always outside the scope of the compensation bargain" and not barred by exclusivity provisions of workers' compensation act).

Here, the Court confines its analysis solely to the issue whether Roy's death was incurred "in the course of" her employment. The Court reasons that the present action must fail as a matter of law because the employee's alleged conduct is not specifically excepted from the Act. This ignores the requirements of the statute and the teaching of our previous decisions. Carrying the reasoning of the Court to its logical conclusion would result in a determination that the Act confers immunity on an employer who during the work hours of the employee willfully and intentionally directs an unknowing employee to descend a flight of stairs, knowing the stairway is unlit and is missing several consecutive steps; shoots the employee at the workplace; or pushes the employee out a third floor window. To suggest, as does the Court, that some of this conduct may be so egregious as to expose the employer to criminal sanctions cannot justify cloaking the employer with the exclusivity and immunity of the Act. *See id.* 30 Cal.Rptr.2d at 29–30, 872 P.2d at 570–71 (recognizing that employer's conduct could result in criminal sanctions).

1. The following cases shed more light on this requirement, albeit in circumstances where there were no allegations of willful or intentional conduct on the part of the employer: *Johnson v. Drummond, Woodsum, Plimpton & MacMahon,* 490 A.2d 676, 678 (Me.1985) (affirming noncompensability pursuant to Act for injuries caused by assault at workplace of employee who "created the circumstances that assured the harm [from employee's husband] could happen only at work"); *Chase v. White Elephant Restaurant,* 418 A.2d 175 (Me.1980) (affirming noncompensability pursuant to Act for injuries caused by assault of employee at workplace by husband of co-employee).

This case does not require the Court "to create a judicial exception" to the Act. It is clear from the language of the Act, and our previous construction of that language, that the Legislature never intended the circumstances of this case to be included in the Act. Accordingly, I would vacate the summary judgment.